### CLARK T. NORTHROP ET AL.

### v.

### THE FIRST NATIONAL BANK OF CHICAGO.

|  |  |
|---|---|
| 27 | 527 |
| 71 | 31 |
| 27 | 527 |
| 86 | 144 |

*Warehouse Receipts*—Quasi *Negotiable Character of*—*Secret Lien*— *Transfer without Notice*—*Replevin*—*Other Securities.*

1.  Warehouse receipts issued by others than those designated by the statute as public warehousemen, have a *quasi* negotiable character.
2.  The assignee of such a receipt without notice is not bound by a verbal arrangement between the parties, touching a claim of the party holding the property.
3.  In an action of replevin by the assignee of such receipt, the fact that the plaintiff holds other securities can not be urged in defense.

[Opinion filed December 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

In the latter part of 1885 or the early part of 1886, appellants, dealers in hides, tallow, etc., at 131 and 133 East Kinzie Street, Chicago, sold to James Smibert 227 hides and received

from him payment therefor. The purchaser not wishing to remove the hides at that time, it was arranged that they should remain at appellants' above named place of business a few days. Sometime after that Smibert wanted to buy some tallow of appellants on credit, which they at first declined to sell except for cash. Smibert then said to them that those hides were in their cellar and they (appellants) were safe enough. Thereupon they sold and delivered the tallow to him on credit, and have never been paid the price thereof. Afterward, and on January 21, 1886, appellants issued and delivered to Smibert a warehouse receipt as follows:

"CHICAGO, January 21st, 1886.

"Received in stores Nos. 131–133 East Kinzie street, for account of James Smibert, the following merchandise: 227, No. 1 green salted steer hides, subject to storage of 2 cents per hide per month; deliverable only on surrender of this receipt.

"C. T. NORTHROP & Co."

That receipt was indorsed and pledged in January or February, 1886, by Smibert to appellee, for an actual loan of money then made by it to him, amounting to about $1,700, which has not been paid.

The note given by Smibert for that loan was subsequently renewed, and other loans were made to him by the bank, making his aggregate indebtedness to the bank on June 18, 1886, and at the time this suit was brought, about $11,000, for all of which he agreed the hides should be held as security. The bank had no notice of the verbal arrangement between Smibert and appellants until July 30, 1886. On July 17 and 30, 1886, appellants made other advances to Smibert, for which he agreed with them that they might hold the hides as security. The loans by the bank remaining unpaid, its attorney demanded the goods of, and tendered the storage to, the appellants; the tender was refused and appellants declined to deliver the goods. Thereupon appellee brought this action of replevin for the hides and the same were delivered to it by the sheriff. The jury found property in the bank. Motion

for a new trial by defendants overruled and exception. Judgment on verdict. Defendants appeal.

Messrs. Burke & Hollett, for appellants.

Mr. Orville Peckham, for appellee.

Garnett, P. J. The *quasi* negotiable character of warehouse receipts was judicially recognized long before the act of the legislature of this State for the regulation of public warehouses was passed. Prior to that time the principle applied by the courts was, that the delivery of warehouse receipts is a symbolic delivery of the property itself, and that it has the same effect as the delivery of the property and can have no greater, and that a transfer of the warehouse receipt, by the person in possession of it, gives no higher title than would the transfer of the property by the same person. Burton v. Curyea, 40 Ill. 320. And in the notes to Lickbarrow v. Mason, Smith's Leading Cases, Vol. 1, Part 2d (7 Am. Ed.), 1197, it is said that " the exigencies of trade have called a class of instruments into being, which are, substantially, acknowledgments by public or *private* agents, that they have received merchandise, and from whom or on whose account, and usage has made the possession of such documents equivalent to the possession of the property itself; and to this class belong warehouse receipts." There are numerous authorities bearing more or less directly upon the question presented here, and among them the following: Broadwell v. Howard, 77 Ill. 305; Western Union R. R. Co. v. Wagner et al., 65 Ill. 197; Chicago Dock Co. et al. v. Foster et al., 48 Ill. 507; Canadian Bank v. McCrea, 106 Ill. 281; Mida v. Geissman, 17 Ill. App. 207; Sargent v. Central Warehouse Co., 15 Ill. App. 553; Spangler v. Butterfield, 6 Col. 356; Durr et al. v. Hervey, 44 Ark. 301; Fourth Nat'l Bank v. St. Louis Cotton Com. Co. et al., 11 Mo. App. 333; State v. Bryant, 63 Md. 66; Hale et al. v. Mil. Dock Co., 29 Wis. 482; Griswold v. Haven, 25 N. Y. 595; Second Nat'l Bank v. Walbridge et al., 19 Ohio St. 419; Gill & Co. v. Frank, 12 Oregon, 507; Soloman v. Bushnell,

11 Oregon, 277; Benjamin on Sales (2 Am. Ed.), Sections 815
–823; 2 Daniel on Neg. Inst. § 1713; Planter's Rice Mill Co.,
v. Merch. Nat'l Bank of Savannah, 3 S. E. Rep. 327.

Conceding this array of authority "speaks a various lan-
guage" on the question under discussion, as well as on other
kindred and closely allied questions, we think the current of
opinion in this country supports the doctrine of the note to
Smith's Leading Cases, quoted above. That such is the rule
adopted in this State, and that warehouse receipts issued by
private agents or by warehousemen, other than those described
as public warehousemen, are placed on the same footing as
bills of lading, in respect to their *quasi* negotiable character,
we have no reason to doubt. If that be true, the case of
Western Union R. R. Co. v. Wagner et al., *supra*, must be
held to control the case at bar. In that case the vendor of the
goods delivered them to the railroad company and authorized
the railway agent to issue a bill of lading to the vendee, with
the verbal agreement between vendor, vendee and the railway
agent that the property should not, in fact, be shipped, until
the residue of the purchase money should be paid. The bill
of lading was issued and placed in possession of the vendor,
and he then handed it to the purchaser, one Hewitt, who, with-
out notice of said verbal agreement, advanced to the vendee
the value of the property on the pledge of the receipt. The
court held that the document might be regarded either as a
bill of lading or a warehouse receipt, but that in either case,
the vendee was placed in possession of the property, so far as
third persons knowing nothing of the verbal arrangement
might become interested; that such verbal arrangement was
not of the slightest avail against Hewitt.

The position of appellants here is not more favorable than
that of the vendor in the Wagner case. The receipt to Smi-
bert was issued after the first advance made to him by appel-
lants. They might have provided in the receipt for their own
protection, had they so desired, and unless they intended to
waive the benefit of the lien for advances which Smibert had
consented to, it was culpable negligence on their part to issue
a receipt which is commonly regarded as representative of the

property, without any mention therein of any claim except for storage.

Appellee held other securities which appellant insists should have been exhausted before it is allowed to resort to the property covered by the warehouse receipt. That suggestion may possibly be listened to in a court of equity, but in this suit at law it is of no force.

There was no error in the instruction given for the plaintiff. The judgment is affirmed.

*Judgment affirmed.*