## Rice & Bullen Malting Co. v. International Bank.

1. AGENCY—*Its Existence—How Established.*—The existence of an agency may be established by the oral testimony of an employe of the principal, having knowledge of the fact.

2. SAME—*Liability of a Purchaser After Notice.*—Where a person purchases property in the possession of an agent, but before paying for the same is notified that the person of whom he is buying is only an agent, he will be liable to the principal for the same.

3. SAME—*Payment by a Purchaser of Goods from an Agent.*—It is immaterial to a purchaser of goods from an agent to whom he makes payment, and he can not be prejudiced when he has not contracted with reference to claims against the agent, and pays to one not the real owner, after he has been notified that the real owner makes a claim to the purchase price agreed to be paid by such purchaser.

4. INSTRUCTIONS—*Invading the Province of the Jury.*—It is not error to refuse an instruction which tells the jury what weight it should give to certain evidence bearing on a question of fact in issue.

**Assumpsit.**—Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed December 14, 1899.

FLOWER, SMITH & MUSGRAVE, attorneys for appellant, contended that conversations between a principal and agent not brought to the knowledge or attention of a party to a suit are incompetent, and it is error to permit them to be proven. Adams Express Co. v. Boskowitz et al., 107 Ill. 660; Cottom v. Holliday, 59 Ill. 176; Boeker v. Hess, 34 Ill. App. 332.

Where a person intrusted with goods as an agent sells them to one who has no knowledge that he is agent, but is led to believe from the manner that he has been allowed to deal with the goods that they are his, the principal is bound by the contract made and by the equities of the purchaser. Mechem on Agency, Secs. 279, 283, 284, 362 and 709; Story on Agency, Secs. 390 and 444; Am. & Eng. Ency. of Law, Vol. 1, p. 410, and Note 2; Koch v. Willi, 63 Ill. 144; Connelly v. McConnell, 39 At. Rep. 773; Locke v. Lewis, 124 Mass. 7; Traub v. Milliken, 2 Am. Rep. 14; Kelly v. Munson, 7 Mass. 319.

Moran, Kraus & Mayer, attorneys for appellee.

The authority of an agent where the question of its existence is directly involved, can only be established by tracing it to its source in some word or act of the alleged principal. Even where the agent enters into a written contract, it is competent for the principal to show by parol evidence that the agent was acting for him. Barker v. Garvey, 83 Ill. 184.

It has been uniformly held that proof of the authority of the agent can be shown either by the principal or the agent. Mechem on Agency, Ed. of 1889, Sec. 100; Barker v. Garvey, 83 Ill. 184; Ohio & Miss. Ry. v. Middleton, 20 Ill. 637; C. B. & Q. v. Willard, 68 Ill. App. 315; Snow v. Warner, 51 Mass. 136; Am. & Eng. Ency. of Law, 2d Ed., Vol. 1, p. 970, and cases cited; Lunsford v. Smith, 12 Gratt. 554.

Mr. Justice Windes delivered the opinion of the court.

Appellee sued appellant in assumpsit to recover the value of certain malt claimed to have been sold by appellee's agent, one Pank, on May 4, 1894, and recovered a judgment for $3,646.67, from which this appeal is taken. No question is made as to the amount of the judgment, but appellant contends that it was not liable in any event.

The declaration was the common counts, to which appellant pleaded the general issue. The jury found generally for the appellee and assessed the damages for the amount for which the judgment was rendered, and also made certain special findings as follows:

" At the time of the making of the contract for the sale of the malt by J. H. Pank and the defendant, was anything said about malt of the International Bank, or belonging to the International Bank ?"   " No."

" At the time of the delivery of the National Storage Company's receipt, numbered 3572, in evidence, to J. H. Pank, did the plaintiff, the International Bank, know that said Pank had made a bargain for the sale of malt to the defendant company ?"   " Yes."

" At the time of the delivery of the National Storage Company's receipt, numbered 3572, in evidence, to J. H. Pank, was such delivery made for the purpose of having

said Pank deliver the malt called for by said receipt to the Rice and Bullen Company, pursuant to a contract which Pank had theretofore made with the defendant company for the sale to it of 25,000 bushels of malt at fifty-one cents per bushel?"   "Yes."

"Did not the defendant company agree with J. H. Pank to purchase of and from said Pank about 25,000 bushels of malt at fifty-one cents per bushel, to be delivered F. O. B. cars by said Pank, and to make payment for said malt to the Fort Dearborn National Bank?"   "Disagree."

"If you say that the defendant company did agree with J. H. Pank to purchase of and from said Pank about 25,000 bushels of malt at fifty-one cents per bushel, to be delivered F. O. B. cars by said Pank, and to make payment for said malt to the Fort Dearborn National Bank, was not the malt in controversy delivered under such contract before the defendant had any knowledge of any interest in or claim thereto by the plaintiff?"   "Disagree."

The evidence shows that on June 9, 1893, Pank & Co. were doing business as maltsters in Chicago, and in the course of such business received from the National Storage Company, which was doing business as warehousemen, a warehouse receipt, dated June 9, 1893, for 6,000 bushels of malt in bin No. 1 at the warehouse of said storage company, which malt, by the terms of said receipt, was to be delivered to Pank & Co. upon the payment of storage and charges and the surrender of the receipt properly indorsed. This receipt, with two others, each for 6,000 bushels of malt, was pledged to secure two notes of Pank & Co., one dated October 21, 1893, for $7,800, and one dated November 1, 1893, for $4,000, and both payable to Wakem & Marshall. Appellee purchased both said notes in good faith for value, and received the notes, together with the said warehouse receipts, during February, 1894, and in connection therewith received certain collateral security. This suit is to recover for the contract price of the malt mentioned in the first receipt which was delivered by the appellee to J. H. Pank, a member of the firm of said Pank & Co., as appellee's agent, to sell the same to appellant. Prior to the delivery of the receipt to Pank, Pank & Co. had made an assignment for the benefit of their creditors to one Moeller

Rice & Bullen Malting Co. v. International Bank.

as assignee.  Moeller, on May 4, 1894, requested, in writing, appellee to deliver to Pank the receipt in question "for delivery on sale to" appellant, and stated in the writing that he would hold himself responsible to appellee for the amount due it.  This request was made at the suggestion of Lowenthal, assistant cashier of appellee, and was delivered by Pank to appellee at the time he received the warehouse receipt.

Pank & Co. had also borrowed money of the Union National Bank, and were also indebted to the Fort Dearborn National Bank, to secure which indebtedness they had pledged other like warehouse receipts of the National Storage Company to them of certain malt, which receipts showed that the malt therein mentioned was stored in other bins in the warehouse of the storage company.

Pank sold the malt here in question to appellant on April 26, 1894, and also some 19,000 bushels more which was mentioned in the warehouse receipts held by the Fort Dearborn and the Union National Banks.  There is some conflict in the evidence as to whether appellant knew at the time that the malt was received by it, as to whether the malt here in question belonged to appellee or to the Fort Dearborn Bank; but the evidence is clear that appellant knew, before it claimed to have paid to the Fort Dearborn Bank for the malt in question, that appellee claimed to be the owner of it and entitled to receive the proceeds thereof.

Appellant contends, and there is evidence to support the contention, though there is evidence to the contrary, that it purchased the malt here in question from Pank upon the understanding on its part that the purchase price thereof was to be paid to the Fort Dearborn Bank.

It is also claimed by appellant that appellee, by the delivery of the warehouse receipt in question, lost its lien on, or property in the malt; and in that connection it is further claimed that the National Storage Company did not in fact at the time in question have possession of the malt, but that the storage company permitted such possession to be in Pank & Co. and their employes.  This latter

contention is not sustained by the evidence, which shows clearly that up to the very time the malt was taken to be delivered to appellant it was in the exclusive possession of the storage company.

Appellee was, over the objection of appellant, allowed to show the agency of Pank for appellee to sell the malt, by oral evidence of the witness Lowenthal, assistant cashier of appellee, as to instructions given by him to Pank at the time the receipt was delivered to the latter.

On cross-examination of the same witness it appeared that appellee had received other warehouse receipts as collateral to its claim than the one here in question, and was asked what had become of them, to which objection that it was not cross-examination was interposed, and the court sustained the objection. The witness was, however, recalled before the close of plaintiff's case and was fully cross-examined as to the amount due appellee.

Numerous objections are made as to the instructions given for appellee, those on behalf of appellant refused, and also as to the modification of certain instructions asked by appellant, which will be referred to hereafter.

We are of opinion that the evidence as to the agency of Pank was entirely proper. Indeed, we can not well see how it could have been established in any other way. The fact that no one representing appellant was present at the time Pank received his instructions as to the sale of the malt, can make no difference as to the competency of the evidence. Mechem on Agency, Secs. 81, 100, 106; Barker v. Garvey, 83 Ill. 184; R. R. Co. v. Willard, 68 Ill. App. 315.

Any error of the court, if it was error, in refusing to allow the witness Lowenthal to state what had become of the other warehouse receipts besides the one here in question, was cured by the subsequent cross-examination of the same witness. The only possible materiality of the evidence would have been to show that appellee had realized upon such collateral sufficient to pay appellee's claim. This was fully covered by the further cross-examination of

the witness, in which he stated that there was something due upon the note. This was sufficient to allow a recovery for appellee. It was immaterial to appellant how much was due. Tooke v. Newman, 75 Ill. 215.

Certain instructions were given for appellee to the effect, in substance, that if the evidence showed that the bank sold the malt through its agent, Pank, to appellee, and that the malt belonged to appellee, of which appellant was notified before it paid the Fort Dearborn Bank, and that appellant had not paid appellee therefor, then the verdict should be for appellee. Especial complaint is made of the sixth instruction given for appellee, which is in substance as above stated, except that the time of notice to appellant is not fixed. This, it is argued, tells the jury that the appellant is liable without any reference to when it received notice that appellee claimed to own the malt in question, and would justify the jury in finding there was liability to appellee, even though the appellant was first notified of appellee's claim to the malt after it had paid the Fort Dearborn Bank for it. Appellant also contends that the instruction is in direct conflict with instructions 5b and 7, given on behalf of appellant, as modified by the court, the former of which tells the jury, in substance, that if they believe, from the evidence, that appellee held the warehouse receipt in question on May 4, 1894, and on that day surrendered it to Pank, and in consideration thereof received the written request of Moeller, assignee, of that date, then that appellee lost all lien it had by virtue of the receipt upon the malt as against appellant; and further, if the jury should believe, from the evidence, that said malt was sold and delivered by Pank to appellant without any agreement on its part to pay appellee therefor, and without any knowledge on the part of appellant of any claim by appellee to the malt, at the time appellant received or paid for the same, then the jury should find for the appellant; and the latter of which said instructions is in substance to the effect that if appellant bought the malt in question from Pank & Co. and agreed to pay for the same to the Fort

Dearborn Bank, that the malt was delivered to appellant by Pank & Co. or J. H. Pank pursuant only to such agreement, then the jury should find for appellant, provided they also believed that appellee surrendered its warehouse receipt to Pank or Pank & Co. prior to the delivery of the malt to appellant, and provided further, that appellant did not know or was not notified of appellee's claim to the malt. Instruction 6 for appellee is certainly in conflict with the two instructions for appellant above referred to as to the matter of the time when appellant received notice of appellee's claim to the malt, and would be cause for reversal but for the fact that the instructions on behalf of the appellant are as favorable to it in that respect as could be asked under the law, and for the further fact that there is no conflict in the evidence, but that appellant knew of appellee's claim to the malt in question before it claimed to have paid for the same to the Fort Dearborn Bank. In fact, appellant concedes that it knew of appellee's claim before such alleged payment.

We are of the opinion that there can be no question that the law is, the case of Boston Ice Co. v. Potter, 123 Mass. 28, to the contrary notwithstanding, that where a person deals with an agent who is clothed with the possession of property, and before payment for such property is made by the person purchasing the same, the purchaser is notified that the person with whom he dealt was only an agent, the purchaser will be liable to the principal, whoever he may be. Kelley v. Munson, 7 Mass. 319; Traub v. Milliken, 2 Am. Rep. 14 (57 Me. 63); Mudge v. Oliver, 1 Allen, 74.

It is immaterial to a purchaser of goods from an agent to whom he makes payment, and he can not be said to be prejudiced when he has not contracted with reference to a claim he has against the agent, and pays to one not the real owner, after he has been notified that the real owner makes a claim to the purchase price agreed to be paid by such purchaser. In the case at bar appellant had no equities as against Pank or Pank & Co. According to its claim it merely desired that the Fort Dearborn Bank should collect its debt.

None of the special interrogatories answered by the jury relate to ultimate facts in the case inconsistent with the general verdict, and no question is raised by appellant as to the interrogatories which the jury failed to answer.

It is claimed that the court erred in refusing to give, as asked, appellant's instructions 5b and 7, and in modifying them and giving them as modified. We have above stated the substance of these instructions as modified and given by the court. Instruction 5b, as asked, was clearly erroneous, in that it told the jury, in substance, that the appellant was not liable for the malt if it did not know of appellee's claim thereto at the time it was received by appellant. The 7th instruction, as asked, was clearly erroneous, in that it told the jury, in substance, that the appellant was not liable for the malt, although it knew, prior to its delivery to appellant, of appellee's claim thereto.

The further claim is made that the court erred in refusing to give appellant's 3d, 4th, 6th and 12th instructions. They need not be set out. It seems sufficient to say that the 3d instruction substantially tells the jury what weight it should give to certain evidence bearing on a question of fact in issue. The 4th instruction simply states an abstract proposition of law without making any application of it to the case at bar. The 6th instruction for appellant omits the matter of Pank's agency for appellee and all question of notice to appellant of appellee's claim to the malt before payment therefor to the Fort Dearborn Bank. The 12th instruction is subject to the same faults as the 6th.

Appellant also makes claim that the warehouse receipt in question was void and did not constitute *indicia* of ownership, and refer to the case of Union Trust Co. v. Trumbull, 146 Ill. 73. An examination of this case shows that it is not applicable to the case at bar. Moreover, even if it be admitted that the warehouse receipt was invalid, appellee obtained possession of the malt covered by the receipt, and there is no question in this case as to the rights of creditors or innocent purchasers. See also as to the validity of the receipt in question and its effect as a muniment of title

Northrup v. First Nat. Bank, 27 Ill. App. 527, and cases there cited; M. & C. R. R. Co. v. Phillips, 60 Ill. 198; and Montgomery Ward & Co. v. Am. T. & S. Bk., 71 Ill. App. 20, 29, and cases cited.

Other contentions are made by appellant's counsel, which we deem it unnecessary to refer to specifically; suffice it to say they have all been considered, and in our opinion are not tenable.

The judgment of the Superior Court is affirmed.