## WHITNEY MANUF. CO. v. RICHMOND, &c., R. R. COMPANY.

1. EVIDENCE—RELEVANCY.—The question being whether goods placed on a railroad switch, built for the delivery of freight to a manufacturing company, were delivered before the cars were unloaded, the practice of the railroad company in delivering freight out of cars at other switches, was irrelevant.

2. NON-SUIT—DELIVERY.—If the question of delivery be a mixed question of law and fact, it may be passed upon by the judge in a law case, on motion for non-suit, when there is no conflict of testimony.

3. IBID.—IBID.—CARRIERS.—A switch was built by a railroad company at the request of a manufacturing company, and for its use, where its freight was left in sealed cars.   A car with cotton in it was placed on this switch,

the bill of lading surrendered to the railroad company, and the freight paid, after which the seal of the car was broken and the car partly unloaded by the consignee, without any supervision by a railroad employee, when the car and its unloaded contents were destroyed by fire. In action against the railroad company by the owner of the burnt cotton, to recover for its loss, *held*, that there was full proof of delivery, and no testimony of any subsequent interference by the carrier, and, therefore, a non-suit was proper.

4. IBID.—IBID.—WAREHOUSEMAN.—The cotton having been delivered to the owner, the railroad company did not occupy the position of warehouseman thereafter.

5. IBID.—IBID.—IBID.—The fact that the railroad company permitted the cotton to remain in its car after the delivery, did not impose any liability on this company.

6. RAILROAD—COMMUNICATED FIRE—EVIDENCE.—The testimony showing that the door of the car was closed on the side towards the main line, with the wind blowing from side track to main line, and no testimony whatever to show that the fire originated from a spark of a passing locomotive, the question, whether the fire was so caused, could not have properly been submitted to the jury.

7. AN EXCEPTION IS TOO GENERAL which alleges error "in granting the non-suit and dismissing the complaint."

Before FRASER, J., Spartanburg, January, 1892.

Action by the Whitney Manufacturing Company against the Richmond and Danville Railroad Company. A witness for plaintiff, being examined by Mr. Simpson, plaintiff's counsel, was asked:

"What do you know about the Archer switch, as to receiving cotton from the Archer switch, unloading cotton from the switch? (Objected, on the ground that what was done at the Archer switch has nothing to do with the case, unless it is shown that the Archer switch is exactly such a switch as the Whitney switch.)

'Mr. Simpson: We attempted to show yesterday that the manner of receiving cotton from the railroad company was the same at the Whitney switch as at the Air Line depot. We wish to show that at the Archer switch, which is considered to be in the railroad yard, cotton was received without there being an agent there to turn it over, just as there was no agent

REP.]                     November Term, 1892.

at the Whitney switch.   We want to show what the defend-
ant's agent said to this witness relative to taking cotton from
the cars at the Archer switch.

"By the court: So far as we know, no one ever got any cotton
or anything else at the Whitney switch except the plaintiff
himself, and this makes the switch quite a different switch
from the Archer switch, about which we know nothing so far,
from the testimeny, except that it is called a switch.   I do not
think the question is competent."

Appellant's grounds of appeal were as follows:

I. In allowing testimony introduced going to show why the
Whitney switch, where the cotton was burned, was put in. . II.
In refusing to allow the witness, Dr. C. E. Fleming, to testify
that his course of dealing with defendant company at Whitney
switch was identical with that at Archer switch, and that
Archer switch was considered as in the yard.   III. In holding
that the mere placing of the cars of cotton on side track at
Whitney switch was a delivery of the cotton to plaintiff, and
that there was no further liability on defendant with reference
to it, and in granting the non-suit.   IV. In not holding that,
as long as the cotton was in one of defendant's cars, it was in
defendant's possession, and defendants were liable for loss by
fire.   V. In not holding that, even if defendant's liability as a
common carrier ended when car was placed on side track, they
then became warehousemen, and were liable as such, unless
plaintiff had had a reasonable time to remove the cotton, and
in not leaving it to the jury to say whether there had been such
reasonable time.   VI. In not, at least, leaving the question of
fact to the jury, whether there had been any such course of
dealing between plaintiffs and defendants as would make the
placing of the car on the side track a delivery of the cotton, and
in not refusing to grant the non-suit.   VII. In not holding that,
even if not liable as common carriers nor as warehousemen, still
there was evidence enough to go to the jury tending to show
that the cotton, while on defendant's right of way, was burned
by fire from one of defendant's locomotives, and in not refus-

ing the non-suit. VIII. In granting the non-suit, and dismissing the complaint, with costs.

*Messrs. Bomar & Simpson,* for appellant.

*Messrs. Duncan & Sanders,* contra.

February 23, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiff, appellant, shipped by the defendant, respondent, thirteen bales of cotton in December, 1889. It appears from the "Case" that they had made an arrangement with each other, whereby all machinery and cotton shipped by the appellant over the respondent's road should be delivered at a switch known as the "Whitney switch," it being a side track alongside the respondent's leased railroad, about two miles distant from Spartanburg, this "Whitney switch" having been graded by the appellant, and the track thereof having been constructed by the respondent. No other customer of the respondent other than the plaintiff, appellant, ever used said "Whitney switch" as the point of delivery by the respondent. The cotton having been destroyed by fire some time in December, 1889, while the same was being unloaded from a car of the defendant, respondent, placed on said "Whitney switch," a contention arose as to which party should bear the loss. The complaint alleges that such cotton was destroyed by fire while in the custody of the defendant, respondent, either as a common carrier or warehouseman, or was destroyed by fire communicated to said cotton by the acts of the authorized agents and employees of said defendant, respondent, and by the negligence of said last named party. This was denied by the answer. At the trial before Judge Fraser and a jury at January term, 1892, of the Circuit Court for Spartanburg, at the conclusion of the plaintiff's testimony, the defendant, respondent, moved for a non-suit, which was granted, and after entry of judgment thereon the plaintiff appealed therefrom.

Before setting out the grounds of appeal, it may be as well to notice the results established by the testimony. There was ample proof that the thirteen bales of cotton were burned in

the car belonging to the defendant, respondent, while on the track known as the "Whitney switch." It was proved, also, that this car had been placed at this point two or three days before the fire, by the defendant, respondent, at the request and direction of plaintiff, appellant. It was also proved, as a part of their arrangement, that the cars should not be guarded by the respondent, and the plaintiff, appellant, had the right even to break any seals placed on the doors of the car; that this arrangement was made at the request and for the convenience of the plaintiff, appellant; that the plaintiff, appellant, had, two days before the fire, and on the day the car with this cotton had been placed on the "Whitney switch," surrendered to the defendant, respondent, the bill of lading for the cotton in this car; that, as a further part of the arrangement between these parties, the plaintiff, appellant, had the right to remove the cotton so shipped without any superintendence by the defendant, and, as a fact, that six bales of cotton had been taken out of the car before the fire occurred; that the door of the car next to the railroad track was shut; that the plaintiff, appellant, had opened, and left open, the door of the car on the opposite side of the railroad track; that absolutely no explanation was given as to the origin of the fire, and that the wind, on the day of the fire, blew from the direction of the car, as it stood on the "Whitney switch," to that of the main track of the railroad, alongside of the car.

The grounds of appeal will be set out in the report of the case, and they will not be reproduced here, only so far as it may be necessary to understand our rulings upon the points submitted by the appellant.

First: It is contended that the Circuit Judge erred when he refused to allow the testimony of the witness Fleming, when it was sought to have him state the practice of the defendant, respondent, at what was known as the "Archer switch" in the yard of the railroad at Spartanburg. Was it relevant? The pleadings make no reference to the "Archer switch," or to any practice of the railroad thereat, or at any other point on its line. Great care has to be observed by the Circuit Judge to prevent the introduction of irrelevant

24—38

testimony, especially when objection is made to such testimony on that ground. The objection to this testimony was made, and we are unable to perceive any error in the ruling made by the Circuit Judge.

The second (third) ground of appeal relates to the Circuit Judge passing upon the matter of delivery, and its effects under the testimony in the case. While it may be admitted that a question of delivery is a mixed question of law and fact, yet there was no conflict of testimony here. Matters of law may be passed upon by the court. The Circuit Judge having discharged the legal functions of his high office in this matter, we see no error.

The third (fourth) ground of appeal seeks to hold that defendant, respondent, had possession of the thirteen bales of cotton at the time of the fire as a common carrier, and as the cotton was burned while in such car, that the Circuit Judge erred in granting the non-suit. We do not know that our views as to the propriety of non-suit can be any better given than by quoting the language of this court in referring to this subject, as found in *Davis* v. *Railroad Company*, 21 S. C., 101: "When there is any competent, pertinent, and relevant testimony offered to the facts in dispute, the case passes into the hands of the jury and beyond the judge; but when no such testimony is offered, it is the province and duty of the judge to non-suit. In the absence of all testimony in support of the material allegations in the complaint, which is a question for the judge, a non-suit is proper; but when there is any testimony directed to said allegations, the weight, truth, and sufficiency of which are to be determined, the case must go to the jury."

Was there any testimony to be passed upon by the jury in this view of the case? Had not there been an absolute determination of the duty of the common carrier? He had transported the goods from the point of shipment to the place of delivery in perfect condition. The way bill had been delivered up as a receipt to the railroad company therefor. Not only were the goods receipted for, but actually received. To test this matter, suppose this cotton had been stolen from the car

on the "Whitney switch," would the defendant, respondent, have been responsible therefor? No. Why? Because the cotton had been delivered, and in law was no longer the property of the common carrier as to third persons, but was the property of the plaintiff, appellant. There was absolutely no testimony that the defendant, respondent, had in any manner interfered with this property after such delivery, and in the absence of all testimony to this effect, there was no issuable fact for the jury to try.

Nor are we able to perceive any force in the position, that if the relation of common carrier had ceased, that of warehouseman began, as is suggested in the fourth (fifth) ground of appeal. No testimony was adduced on this line, and, of course, then, there was no error. We cannot understand that the responsibility attaching to a warehouseman can be alleged when the property is placed in the charge of the true owner.

As to the fifth (fourth) ground of appeal, which alleges that as long as the cotton was in defendant's car it was in defendant's possession, and defendant was liable for loss by fire, we are unable to see how a kindness or privilege can be construed into a right. Take this illustration: a common carrier undertakes to deliver at a certain point in a city, and does then actually deliver; but after such delivery the owner asks the privilege of allowing his goods to remain in the vehicle, and injury afterwards happens, there is no liability upon the common carrier if he does not interfere to cause that injury.

The sixth (seventh) ground of appeal suggests that if no liability existed as common carrier or warehouseman, still the question of destruction of cotton while on defendant's right of way by fire communicated by defendant's locomotive remained. It is admitted that section 1511 of our General Statutes is very sweeping, and would cover the case here, if there was any testimony, even the slightest, going to show that this fire was the result of sparks from the locomotive used by defendant, or was the act of any agent or employee of the railroad. But in the absence of any such testimony the Circuit Judge committed no error. *Brown* v. *Railroad Company,* 19 S. C., 39.

7     The seventh (eighth) is too general to merit further attention.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.