448 P.2d 803

Lloyd SCOTT and J. K. Scott, Individually and Lloyd Scott and J. K. Scott d/b/a Scott Brothers Drilling Company, Defendants-Appellants,

v.

MURPHY CORPORATION and McWood Corporation, Defendants-Appellees.

No. 8404.

Supreme Court of New Mexico.

Nov. 25, 1968.

Rehearing Denied Jan. 7, 1969.

698

Paul A. Phillips, Rodey, Dickason, Sloan, Akin & Robb, James C. Ritchie, Albuquerque, for appellants.

Tansey, Rosebrough & Roberts, Farmington, for Murphy Corp.

White & Musgrove, Farmington, Russell Moore, Albuquerque, for McWood Corp.

## OPINION

NOBLE, Justice.

T. A. Jones and Calvin B. Jones (hereafter termed Jones) brought this action against Lloyd Scott and J. K. Scott, individually and as Scott Brothers Drilling Company (hereafter termed Scott), seeking damages sustained in an oil well fire and explosion at the Murphy Corporation (hereafter termed Murphy) Navajo AA #2 location. Scott made Murphy a third-party defendant, alleging, by cross-complaint, personal injuries to J. K. Scott and property damage to partnership property. McWood Corporation (hereafter termed McWood) was likewise brought in as a third-party defendant. Other individuals not involved in this appeal were permitted to intervene. A number of claims were dismissed. The claims of Jones against Scott and McWood were voluntarily dismissed. The case proceeded to trial on the claims of Jones against Murphy, the claims of J. K. Scott for personal injuries against Murphy and McWood, and the claims of Scott Brothers for property damage against Murphy and McWood.

The court dismissed Scott's claims against Murphy at the close of plaintiff's case. The jury returned verdicts in favor of Murphy on the claims of Jones and in favor of McWood on the Scott claims. Scott filed a motion for a new trial which was denied, whereupon an appeal was taken from the dismissal as to Murphy and from the judgment in favor of McWood based on the jury verdict and the denial of the motion for a new trial.

We shall first consider the claimed error in the dismissal of Scott's claims against Murphy. Scott argues that his claims were dismissed upon the ground that they were barred by the terms of the drilling contract. Pertinent provisions of the contract read:

"CONTRACTOR AGREES to protect, indemnify and hold Murphy free and harmless from and against any and all claims, demands, and causes of action of every kind and character *arising in favor of third parties (including employees of contractor)* on account of personal injuries or death, or damage to property occurring or in anywise incident to, in connection with or *arising out of the*

*work performed by the contractor,* irrespective of whether such claims, demands, and causes of action shall arise when work is being performed by the Contractor or by others with Contractor's equipment on day rate, footage basis or otherwise.

\*　\*　\*　\*　\*　\*

"Contractor agrees that Murphy, and, where the operations are rendered in a joint operation, such other parties in the joint operation with Murphy, shall not be liable for any damage or loss to the materials and equipment furnished by Contractor whatsoever the cause, during the existence of this contract." [Emphasis added.]

Scott agrees that the final paragraph above absolves Murphy from responsibility for loss of the Scott equipment but he argues that the language cannot be interpreted to relieve Murphy from liability to J. K. Scott, individually, and that the question of whether Murphy was negligent and, if so, whether it was a proximate cause of Scott's injury, was properly a question for the jury.

The contract also provides:

"\*　\*　\* Contractor, in the drilling of said well, shall pay all bills for labor, material, or otherwise, arising out of the drilling and completion of said well, except as herein provided to be paid by Murphy　\*　\*　\*."

It was agreed that:

"2. MATERIALS, EQUIPMENT AND SERVICES FURNISHED BY MURPHY CORPORATION.

"The following equipment, materials and services shall be furnished at the location for said well at the sole cost and expense of Murphy:
"\*　\*　\*

"(13) Oil for drilling fluid."

The record makes it apparent that the court directed the verdict in Murphy's favor because of a determination that Murphy was exculpated from liability under the terms of the drilling contract. Scott argues that this was error because in accordance with the terms of the contract, Murphy was required to deliver the oil to be used as a drilling fluid at the well site at Murphy's sole expense, and that the fire and explosion causing the injuries occurred during the unloading of the drilling fluid. Scott contends that the work of unloading the drilling fluid was Murphy's—not "in connection with or arising out of work being performed by the contractor." Without deciding whether the terms of the contract relieved Murphy from liability to Scott, we proceed directly to consider whether, absent the contract provision, and under any view of the case, Murphy can be liable to Scott.

■■■ It is not questioned that Murphy contracted with McWood, an independent contractor, to deliver crude oil to be used as a drilling fluid. It is the general rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. Restatement of Torts (2d) § 409. The mere fact that Murphy was obligated to and did furnish the drilling fluid at its expense does not make the work of unloading the fluid Murphy's work, if it was being performed by an independent contractor.

Scott, however, additionally claims that the facts here bring Murphy within an exception to the general rule which makes the unloading work that of Murphy because Murphy's employee exercised such control over the driver of the McWood truck as to make the truck driver Murphy's loaned or special employee. In this connection, it is asserted that Murphy had prepared a sump pit at the side of the well site. Scott points to the fact that Murphy's geologist directed the McWood truck driver where to park the truck for unloading and then left the drill site, turning over his duty of supervising the unloading to Scott's driller. Two connected pieces of hose failed to reach from the truck to the sump, whereupon the driller dug a shallow trench to conduct the oil

from the end of the hose to the pit. During the unloading, upon instructions of the driller, the truck driver stopped the oil pump, but the truck's engine continued to run. The truck was not grounded. During the unloading of the oil a fire and explosion occurred, severely burning J. K. Scott.

■ Scott asserts that under these circumstances the McWood truck driver was a loaned or special employee of Murphy during the unloading process so that his negligence was that of Murphy. We are unable to agree. If McWood was acting as an independent contractor during the unloading process, there was no relation between its servants and McWood's employer—Murphy. Southern California Petroleum Corp. v. Royal Indem. Co., 70 N.M. 24, 369 P.2d 407; Pendergrass v. Lovelace, 57 N.M. 661, 262 P.2d 231.

■ Our decisions have clearly defined the difference between the relationship of master and servant and that of an independent contractor. The principal test is whether the employer has the right to control the manner in which the details of the work are to be accomplished, not the exercise of any control at all. But neither mere suggestions by the employer nor the "directing control essential to co-ordinate the several parts of a larger undertaking" affect the relationship. Campbell v. Smith, 68 N.M. 373, 362 P.2d 523. See the extended discussion in Shipman v. Macco Corp., 74 N.M. 174, 392 P.2d 9; see also Bland v. Greenfield Gin Co., 48 N.M. 166, 146 P.2d 878, and Burruss v. B. M. C. Logging Co., 38 N.M. 254, 31 P.2d 263. The testimony called to our attention with respect to any control exercised over the truck driver discloses nothing more than "mere suggestions" as to where the truck should be located or the directing control necessary to coordinate this work which was part of a larger operation. Thus, the reason that the court directed the verdict in favor of Murphy and against J. K. Scott, regardless of its theory in doing so, is not material. It is hornbook law that the decision of a trial court will be upheld if it is right for any reason. Since the work was not that of Murphy, it could not have been guilty of negligence proximately resulting in Scott's injury.

■ Scott complains of an instruction concerning the test of whether McWood's truck driver was a loaned employee of Scott. What has been said respecting the control of the truck driver by Murphy applies with equal force to any control exercised over the driver by Scott. We find nothing in the testimony called to our attention in claimed support of McWood's special-employee theory which discloses anything more than "mere suggestions" as to the location or the directing control necessary to coordinate the work which was part of a larger operation. The jury may have denied Scott recovery against McWood upon the theory that McWood's employee had been loaned to Scott. Accordingly, the giving of instruction 29 was error requiring reversal.

Scott next complains of the failure to give certain requested instructions concerning his theory of work to be performed by Murphy. Our holding that it was not error to instruct a verdict in Murphy's favor and against the Scott claim makes it unnecessary to discuss this point.

Other questions are argued but they are either resolved by what we have said, found to be without merit, or unnecessary to determine.

The judgment dismissing the actions of J. K. Scott and Scott Brothers Drilling Company against McWood, based upon the jury verdict, must be vacated and a new trial granted on that claim. In all other respects, the judgment should be affirmed. Costs will be divided equally between Scott and McWood.

It is so ordered.

MOISE and COMPTON, JJ., concur.